172 Ariz. 490 (1992)
838 P.2d 829
RYDER TRUCK RENTAL, INC.
v.
CITY OF PHOENIX.
No. TX 88-00749.
Tax Court of Arizona.
September 30, 1992.
*492 Tielborg, Sanders & Parks, P.C. by J. Clayton Berger, Phoenix, for plaintiff-appellant.
Phoenix City Atty. by Sandra K. McGee, Phoenix, for defendant-appellee.

OPINION
MORONEY, Judge.
This is an action brought by Ryder Truck Rental, Inc., to recover privilege taxes it paid to the City of Phoenix on its rental income from leasing trucks. Former § 14-2(a)(8) of the Phoenix City Code imposed a privilege tax on income from leasing tangible personal property for a consideration. The City of Phoenix assessed Ryder privilege taxes based on this section for the time period of July 1983 through November 1986. Ryder claims it is exempted from this tax under the Phoenix City Code itself or under A.R.S. § 28-1599.05(I) because it pays a motor carrier tax to the State of Arizona.
Ryder and the City of Phoenix filed Cross Motions for Summary Judgment. The Court holds that Plaintiff, Ryder Truck Rental, Inc., is entitled to Summary Judgment. The Court further holds that the Defendant, City of Phoenix, is not so entitled.
Facts
The parties have prepared a Joint Stipulation of Facts for the purposes of their Cross Motions for Summary Judgment Ryder is a Florida corporation authorized to do business in Phoenix. Ryder has, throughout the period in dispute, engaged in the business of leasing trucks and related equipment to businesses and individuals within the City of Phoenix. Ryder leases these trucks without drivers. The customer determines the operation of the vehicles during the rental period, subject to the limitation that the customer may not operate in violation of any laws.
All of Ryder's trucks are motor vehicles as defined in A.R.S. § 28-1599(5) or light-weight motor vehicles as defined in A.R.S. § 28-1599(3). Ryder leases trucks pursuant to short-term leases, long-term leases, and one way leases. Lessees are charged on the basis of both time and mileage.
During the relevant period, Ryder was licensed as a motor carrier by the Arizona Department of Transportation under A.R.S. § 28-1599.01. All of Ryder's trucks were registered with the Department of Transportation pursuant to A.R.S. § 28-1599.01(A)(2). Ryder reported and paid the applicable motor carrier tax on its motor vehicles pursuant to A.R.S. § 28-1599.05(B), and on its lightweight motor vehicles pursuant to A.R.S. § 28-1599.05(C). Ryder obtained cab cards for its vehicles as required by A.R.S. § 28-1599.01(A)(2), posted a motor carrier tax bond pursuant to A.R.S. § 28-1599.04, and filed monthly motor carrier tax reports with the Motor Vehicle Division of the Department of Transportation.
The City of Phoenix assessed Ryder privilege taxes pursuant to former § 14-2(a)(8) of the Phoenix City Code for the period of July 1983 to November 1986. Ryder contested the assessment of these taxes at the administrative level, and after exhausting its administrative remedies, brings suit here.
*493 Exemption Under Phoenix City Code
The former Phoenix City Code imposed a privilege tax on income from leasing tangible personal property for a consideration. Phoenix City Code § 14-2(a)(8). Ryder does not dispute that its leasing activities are taxable under this section. However, it does contend that the Phoenix City Code itself exempts it from the taxes imposed under § 14-2(a)(8).
Prior to 1982, the City of Phoenix imposed a privilege tax on persons who transported people or property for hire. Phoenix City Code § 14-2(a)(6). However, it exempted from this tax persons who paid a motor carrier license tax to the State of Arizona under A.R.S. § 40-641. Phoenix City Code § 14-40(b). Ryder maintains it would have qualified for this exemption because it paid motor carrier taxes to the state.
In 1982, the transportation industry was deregulated. As a result, comprehensive changes were made to the state statutes that taxed motor carriers. Title 40, Chapter 3 of the Arizona Revised Statutes, which contained the motor carrier license tax, was repealed by the Arizona legislature. A.R.S. § 40-641, the specific statute that imposed the tax, was also repealed. In its place, the legislature adopted Title 28, Chapter 9, Article 6; the current motor carrier tax.
In response to these changes, the Phoenix City Council amended the City Code provisions that dealt with motor carriers. Ordinance G-2365 contains some of these amendments. The City Council enacted Ordinance G-2365 in June of 1982 to conform the "Privilege License Tax code to existing law and not to extend the Privilege License Taxation in the transportation area beyond the present practice...." To effect this goal, the Council repealed Phoenix City Code § 14-40(b), the Code provision that had exempted persons who paid a motor carrier license tax to the State from paying a City privilege tax. It then deleted the language in Phoenix City Code § 14-2(a)(6) that taxed persons who transported people or property for hire. Prior to the adoption of Ordinance G-2365, the City taxed transportation activities under Phoenix City Code § 14-2(a)(6) and then exempted those activities under Phoenix City Code § 14-40(b). As a result of the amendments, transporting activities are not taxed in the first place.
Although Phoenix City Code § 14-40(b), the prior exemption statute, was repealed, Ryder maintains that it is still entitled to an exemption. Ryder argues that the Phoenix City Council's intent when it adopted Ordinance G-2365 was to prevent extending privilege license taxation in the transportation area beyond the then present practice. Because Ryder was previously exempt from taxation, the Council's intent was that it remain exempt from taxation.
Exemptions to taxation are strictly construed against the taxpayer. Devenir Associates v. City of Phoenix, 164 Ariz. 530, 531, 794 P.2d 605, 606 (Tax 1990). Tax exemptions, to exist under a statute, must be granted in unequivocal terms. People of Faith Inc. v. Arizona Dep't of Revenue, 161 Ariz. 514, 520, 779 P.2d 829, 835 (Tax 1989). The Phoenix City Code does not unequivocally grant Ryder an exemption from taxation. In fact, the Court cannot find any language in the Code that would support Ryder's assertion that its leasing activities are exempt. The Phoenix City Code did contain an exemption prior to 1982 for persons who paid the motor carrier license tax. Phoenix City Code § 14-40(b). This exemption was repealed by the Phoenix City Council in Ordinance G-2365.
Ryder's argument that it is entitled to an exemption is not based on any statutory language, but on the City Council's intent to prevent extending privilege license taxation in the transportation area beyond the then present practice. Ryder maintains that the Council did not intend to remove lessors from the scope of the exemption when it repealed Phoenix City Code § 14-40(b) and amended Phoenix City Code § 14-2(a)(6). When a legislature enacts a statute, it is the language of the statute which becomes the law. The unexpressed intent of the legislature in enacting the statute has no application. Rio Rico *494 Properties, Inc. v. Santa Cruz County, 834 P.2d 166, 175 (Ariz.Tax 1992); Members of the Board of Education v. Leslie, 112 Ariz. 463, 465, 543 P.2d 775, 777 (1975). The Court holds that Ryder's leasing activities are not exempted from taxation by the Phoenix City Code.
Exemption Under A.R.S. § 28-1599.05(I)
Ryder next argues that A.R.S. § 28-1599.05(I) exempts it from the privilege taxes the City assessed against Ryder's truck leasing activities. A.R.S. § 28-1599.05(I) is contained in Arizona Revised Statutes Title 28, which is entitled "Transportation," Chapter 9, which is entitled "Taxes," and Article 6, which is entitled "Motor Carrier Tax." The motor carrier tax imposed under Article 6 applies to motor vehicles of licensed motor carriers and to lightweight motor vehicles. The tax is based on the vehicle's weight and the miles traveled on public highways within Arizona. A.R.S. § 28-1599.05.
A.R.S. § 28-1599.05(I), which contains the exemption at issue here, provides that motor carriers and lightweight vehicle operators are exempt from certain transaction privilege taxes imposed by local taxing authorities. A.R.S. § 28-1599.05(I) states:
I. Payment of the motor carrier tax by a motor carrier or a person who operates a lightweight motor vehicle shall exempt such motor carrier or lightweight motor vehicle operator from any transaction privilege tax or any similar tax imposed by any taxing authority within this state. Except as provided in this article, no other taxing authority in this state may impose a transaction privilege tax or any similar tax based on the gross proceeds of sales or gross income from sales derived from either:
1. A motor carrier's use on the public highways in this state.
2. A person's use of a lightweight motor vehicle on the public highways in this state.
Ryder argues that the exemption in the first sentence of A.R.S. § 28-1599.05(I) extends to its leasing activities. The City's assessment of privilege taxes against Ryder under § 14-2(a)(8) of the Phoenix City Code was therefore improper. The City urges that Ryder is not a motor carrier for purposes of A.R.S. § 28-1599.05(I). Even if Ryder is a motor carrier, the City maintains the exemption does not apply.
The first question this Court faces is whether Ryder is a motor carrier for purposes of the A.R.S. § 28-1599.05(I) exemption. If Ryder is not a motor carrier, the motor vehicles it leases do not fall within the exemption. The Court holds that Ryder is a motor carrier as defined by A.R.S. § 28-1599(4). That section defines motor carrier as "any person who operates or causes to be operated a motor vehicle on any public highway."
When construing a statute, a court must ascertain and give effect to the legislative intent behind the statute. To do so, the court examines the language used, the context, the subject matter, the effect and consequences, and the spirit and purpose of the law. State v. Korzep, 165 Ariz. 490, 493, 799 P.2d 831, 834 (1990); Wells Fargo Credit Corp. v. Arizona Property and Casualty Ins. Guar. Fund, 165 Ariz. 567, 569, 799 P.2d 908, 910 (App. 1990). The language of the statute is the most reliable evidence of its intent. Jenkins v. First Baptist Church, 166 Ariz. 243, 245, 801 P.2d 478, 480 (App. 1990); Walker v. City of Scottsdale, 163 Ariz. 206, 209, 786 P.2d 1057, 1060 (App. 1989).
The language of A.R.S. § 28-1599(4) indicates that a lessor such as Ryder is a motor carrier. The statute provides that both those who operate a motor vehicle and those who "cause" a motor vehicle to be operated are motor carriers. Ryder concedes that it does not operate its leased vehicles on the public highways. Nor does it direct the operation of a vehicle once it has passed to a lessee. However, Ryder clearly "causes" its trucks to be operated by placing the trucks in the stream of commerce and making them available for leasing.
The City argues that Ryder does not "cause" its trucks to be operated; rather it causes the trucks to be leased, and the *495 lessees cause the trucks to be operated. Each word, phrase, clause, and sentence of a statute must be given meaning so that no part of the statute will be void, inert, redundant, or trivial. City of Phoenix v. Yates, 69 Ariz. 68, 72, 208 P.2d 1147, 1149 (1949); Walker v. City of Scottsdale, 163 Ariz. 206, 210, 786 P.2d 1057, 1061 (App. 1989). The City's interpretation of the definition of motor carrier renders the "causes to be operated" language meaningless.
The cases cited by the City for the proposition that a lessor is not a motor carrier are inapplicable to this situation. The statutes in United States v. La Tuff Transfer Serv., Inc., 95 F. Supp. 375 (D.Minn. 1950) and People v. Tedesco, 18 Cal. App.2d 667, 64 P.2d 966 (App. 1937) do not contain the crucial "causes to be operated" language included in A.R.S. § 28-1599(4). It is not disputed that Ryder itself does not "operate" its vehicles on the public highway. The question is whether Ryder "causes" those trucks to be operated. Neither of these cases addressed this question; they are, therefore, inapplicable.
The statutory language in Harrington v. Cobb, 185 S.W.2d 133 (1945), aff'd, 144 Tex. 360, 190 S.W.2d 709 (1945), is closer to that in A.R.S. § 28-1599(4), but the case is nonetheless distinguishable. The issue in Harrington was whether lessors of trucks were motor carriers for purposes of an occupation tax imposed on motor carriers' gross receipts. The lessors in Harrington leased trucks that were used by lessees to transport goods. The lessees themselves were motor carriers as defined by the statute and were subject to the motor carrier tax. If the court had found that the lessors were also motor carriers, the result would have been double taxation. The court held that lessors are not motor carriers.
The statute in Harrington did contain the "causes to be operated" language present in A.R.S. § 28-1599(4). However, the court did not address this language. The statute defined "motor carrier" as "any person ... operating or causing to be operated any motor-propelled vehicle used in transporting property for compensation or hire over any public highway in this State." Cobb v. Harrington, 144 Tex. 360, 190 S.W.2d 709, 710 (1945) (emphasis added). The court did not address whether the lessors in Harrington caused a motor vehicle to be operated on the Texas highways. Its concern was whether the lessors were engaged in the occupation or business of transporting property for compensation or hire over the public highways. The court held they were not.
A.R.S. § 28-1599(4) does not contain the language crucial to the Court's decision in Harrington. Nor would a decision that Ryder is a motor carrier result in double taxation. Therefore, Harrington is inapplicable.
More generally, the cases cited by the City are inapplicable because of their age. Cases decided before 1982 do not reflect the massive deregulation of the transportation industry that has taken place in the last ten years. Until 1982, the Interstate Commerce Commission heavily regulated almost all aspects of trucking in the United States. The distinctions among the terms motor carrier, common carrier, and contract carrier had great bearing both at federal and state law.
A.R.S. § 28-1599(4), which defines "motor carrier," was enacted after the deregulation of the transportation industry. Its purpose is narrow. The definition is only relevant to determine who is liable for the motor carrier tax imposed by A.R.S. § 28-1599.05. The definition is not carried forward to any general regulatory statutes. A.R.S. § 28-1599(4) defines motor carrier for the purpose of taxation, and for no other purpose. Cases cited by the City which have defined the term "motor carrier" in a context other than this do not apply here.
Including Ryder within the definition of "motor carrier" is also consistent with legislative history. Since the deregulation of the transportation industry in 1982, Arizona has imposed a motor carrier tax on the vehicles of licensed motor carriers under Title 28, Chapter 9, Article 6 of the Arizona Revised Statutes. Prior to 1982, a similar license tax was imposed on contract *496 motor carriers. It was contained in Arizona Revised Statutes Title 40, which was entitled "Public Utilities & Carriers," and Chapter 3, which was entitled "Motor Carriers." A.R.S. § 40-641.[1] This tax was the precursor to the current motor carrier tax. The definition of "motor carrier" is critical to both taxing schemes. It has undergone several revisions since its inception.
Prior to 1956, it was unclear whether the definition of "contract motor carrier of property" which was contained in A.R.S. § 40-601 included lessors such as Ryder. The statute did not specifically refer to "lessors" in its definition. A.R.S. § 40-601 at that time defined contract motor carrier of property as "any person engaged in the transportation on any public highway by motor vehicle of property, for compensation...."
The Arizona Supreme Court resolved the question. In State v. Southwest Lumber Mills, Inc., 80 Ariz. 357, 297 P.2d 1099 (1956), the court held that a truck lessor is not a contract motor carrier for purposes of A.R.S. § 40-601. As a result of the Southwest Lumber decision, the Arizona legislature amended § 40-601(A)(7) to specifically include lessors in the definition of contract motor carrier. The amended A.R.S. § 40-601(A)(7) defined a contract motor carrier of property as:
any person engaged in the transportation by motor vehicle of property, for compensation, on any public highway ... and, for the purpose of taxation, the owner of any motor vehicle in excess of six thousand pounds unladen weight who leases, licenses or by any other arrangement permits the use of such vehicle by any other ...
In 1982, as a result of the deregulation of the transportation industry, comprehensive changes were made to the motor carrier license tax statutes. The legislature repealed the motor carrier license tax imposed under Title 40, Chapter 3. It adopted Title 28, Chapter 9, Article 6 in its place; the current motor carrier tax. The definition of "contract motor carrier" was also amended. "Motor carrier" is now defined as "any person who operates or causes to be operated a motor vehicle on any public highway." A.R.S. § 28-1599(4).
The amendments to the definition of "motor carrier" indicate that the legislature has always intended to treat lessors as motor carriers. When the court found in Southwest Lumber that lessors were not contract motor carriers as the statute then existed, the legislature quickly reacted by adding lessors to the definition. Nothing indicates that the legislature's intent has changed since that revision.
When the current A.R.S. § 28-1599(4) was adopted, the legislature did delete the cumbersome language in A.R.S. § 40-601(A)(7) that specifically referred to lessors, licensors, and those who by any other arrangement permitted the use of a vehicle by another. However, it added the "causes to be operated" language in its place. Lessors and licensors do not "operate" their motor vehicles but they do "cause" their vehicles to be operated. The current A.R.S. § 28-1599(4) says in three words what it took the old A.R.S. § 40-601(A)(7) more than fifteen to say.
The City argues that by deleting the specific reference to lessors, the legislature intended to exclude lessors as motor carriers. This argument would carry more weight had the legislature removed all reference to lessors in the current motor carrier tax statutes. It has not. A.R.S. § 28-1599.01 describes who is required to obtain a motor carrier tax license. A.R.S. § 28-1599.01(A)(2) provides that in a leasing situation, a written lease agreement shall specify whether the lessor or the lessee is responsible for obtaining the motor carrier tax license. Statutory construction requires that provisions of a statute be read and construed in the context of related *497 provisions and in light of its place in the statutory scheme. Arizona State Tax Comm'n v. Staggs Realty Corp., 85 Ariz. 294, 297-298, 337 P.2d 281, 284 (1959); City of Phoenix v. Superior Court, 144 Ariz. 172, 176, 696 P.2d 724, 728 (App. 1985).
The reference to lessors in A.R.S. § 28-1599.01(A)(2), in connection with the definition of motor carrier in A.R.S. § 28-1599(4), reflect a comprehensive legislative scheme to include lessors as motor carriers subject to the motor carrier tax.
The Court's conclusion that Ryder is a motor carrier is further supported by the Department of Transportation's treatment of lessors. Longstanding administrative interpretations of an ambiguous statute will be given deference by the courts. Sahf v. Lake Havasu City Ass'n for the Retarded and Handicapped, 150 Ariz. 50, 58, 721 P.2d 1177, 1185 (App. 1986); Fund Manager, Pub. Safety Personnel Retirement Sys. v. Tucson Police and Fire Pub. Safety Personnel Retirement Sys. Bd., 147 Ariz. 1, 6, 708 P.2d 92, 97 (App. 1985). See also, Long v. Dick, 87 Ariz. 25, 29, 347 P.2d 581, 584 (1959). The Department of Transportation, which implements the motor carrier tax, has consistently treated lessors as motor carriers. It continues to issue motor carrier tax licenses and cab cards to lessors such as Ryder. More significantly, it continues to look to Ryder to post a motor carrier tax bond and for payment of the motor carrier tax.
The City argues that even if Ryder is a motor carrier, A.R.S. § 28-1599.05(I) does not exempt it from paying the City's privilege tax. A.R.S. § 28-1599.05(I) consists of two sentences (subsection (I) quoted on page six of this opinion). The City contends that these sentences are inconsistent. As the City reads the statutory language, the first and more general sentence purports to exempt a motor carrier from any transaction privilege tax, while the second and more specific sentence exempts a motor carrier from privilege tax only on certain of its motor carrier receipts. When the two sentences are interpreted this way, the second sentence becomes superfluous because it is already contained in the first. The City suggests the solution to this perceived inconsistency is the doctrine of ejusdem generis. Courts have used the canon of construction referred to as ejusdem generis to reconcile statutes in which there are listed specific categories followed by a general category. In such a case, the meaning of the general words will ordinarily be presumed to be restricted to include only things or persons of the same kind as those specifically enumerated. State v. Barnett, 142 Ariz. 592, 596, 691 P.2d 683, 687 (1984); Arizona Pub. Serv. Co. v. Town of Paradise Valley, 125 Ariz. 447, 450, 610 P.2d 449, 452 (1980). The City urges that pursuant to this doctrine, Ryder must fall within the scope of the second sentence of A.R.S. § 28-1599.05(I) to benefit from an exemption under that statute. The first and more general sentence should be ignored.
The second sentence of A.R.S. § 28-1599.05(I), in the City's view, applies only to those who "use" the public highways. According to the City, "use" is synonymous with "operate." Ryder does not itself operate its vehicles so it does not "use" them on the public highways. A.R.S. § 28-1599.05(I) therefore does not provide Ryder an exemption.
The Court does not agree with the City's construction of A.R.S. § 28-1599.05(I). A fundamental principle of statutory construction is that the best and most reliable index of a statute's meaning is its language. When the language is clear and unequivocal, it is determinative of the statute's construction. Janson v. Christensen, 167 Ariz. 470, 471, 808 P.2d 1222, 1223 (1991); State ex rel. Corbin v. Pickrell, 136 Ariz. 589, 594, 667 P.2d 1304, 1309 (1983). An equally important principle is that statutes are to be interpreted so that no statutory language is excess or redundant. City of Phoenix v. Yates, 69 Ariz. 68, 72, 208 P.2d 1147, 1149 (1949); Walker v. City of Scottsdale, 163 Ariz. 206, 210, 786 P.2d 1057, 1061 (App. 1990).
The two sentences that form A.R.S. § 28-1599.05(I) are not inconsistent. Nor is one general and the other specific. Both *498 sentences are distinct components that direct the actions of different entities. The second sentence of A.R.S. § 28-1599.05(I) states:
Except as provided in this article, no other taxing authority in this state may impose a transaction privilege tax or any similar tax based on the gross proceeds of sales or gross income from sales derived from either:
1. A motor carrier's use on the public highways in this state.
2. A person's use of a lightweight motor vehicle on the public highways in this state.
(Emphasis added). This sentence is directed to taxing authorities within Arizona other than the State. These authorities impose their own taxes apart from those contained in Arizona Revised Statutes. The second sentence of A.R.S. § 28-1599.05(I) prohibits these authorities from enacting transaction privilege taxes that would tax certain uses of the public highways. For example, the City of Phoenix is prohibited by this sentence from passing an ordinance that would tax a motor carrier based on the miles it traveled within the City.
The first sentence, on the other hand, is addressed not to any taxing authority, but to the individual taxpayer. It states:
Payment of the motor carrier tax by a motor carrier or a person who operates a lightweight motor vehicle shall exempt such motor carrier or lightweight motor vehicle operator from any transaction privilege tax or any similar tax imposed by any taxing authority within this state.
(Emphasis added). This sentence provides that if a motor carrier or a lightweight motor vehicle operator has paid the State motor carrier tax, the revenues it receives from its activities as a motor carrier or a lightweight motor vehicle operator are exempt from any transaction privilege tax imposed by any taxing authority within Arizona. The present situation provides a good illustration of the application of the first sentence. The second sentence of A.R.S. § 28-1599.05(I) does not prohibit the City of Phoenix from imposing a transaction privilege tax on leasing revenue. However, the first sentence provides that a motor carrier such as Ryder is exempt from such a tax because it has paid the state motor carrier tax.
The Court holds that the first sentence of A.R.S. § 28-1599.05(I) exempts Ryder, as a motor carrier, from the transaction privilege tax imposed by the City of Phoenix on its revenues from leasing motor vehicles to the extent that the motor carrier tax has been paid. The Court further holds that this sentence exempts the revenues Ryder received from leasing lightweight trucks.
Although not discussed by the parties, an important distinction exists between lightweight motor vehicles and motor vehicles for purposes of the motor carrier tax. A "motor vehicle" is defined by A.R.S. § 28-1599(5) as a vehicle "in excess of twenty-six thousand pounds declared gross vehicle weight." A "lightweight motor vehicle" is defined by A.R.S. § 28-1599(3) as a vehicle of "more than twelve thousand pounds declared gross vehicle weight but less than twenty-six thousand one pounds declared gross vehicle weight." Both motor vehicles and lightweight motor vehicles are taxed under the motor carrier tax statutes but according to different rates. Ryder leases both types of vehicles.
The specific title of "motor carrier" was created by the legislature to refer to a person who operates or causes to be operated a motor vehicle on any public highway. A.R.S. § 28-1599(4). A similar title has not been created to refer to a person who deals with lightweight motor vehicles. As a result, when the legislature enacted the first sentence of A.R.S. § 28-1599.05(I), it provided an exemption for a "motor carrier" and for a "lightweight motor vehicle operator."
Pursuant to A.R.S. § 28-1599.05(I), the revenues Ryder received from leasing motor vehicles are exempt from the City's tax because of its status as a motor carrier. In order for the revenues Ryder received from leasing its lightweight vehicles to be similarly exempt, A.R.S. § 28-1599.05(I) requires that Ryder be a "lightweight motor vehicle operator." An argument could be *499 made that Ryder is not a "lightweight motor vehicle operator" because it does not itself operate its lightweight motor vehicles on the highway. The Court finds no merit to this argument and holds that Ryder is a lightweight motor vehicle operator for purposes of the exemption provided in the first sentence of A.R.S. § 28-1599.05(I).
"Lightweight motor vehicle operator" is not defined in A.R.S. § 28-1599.05(I). The term is defined in two other statutes that are part of the Motor Carrier Tax Article. A.R.S. § 28-1599.07(D) and A.R.S. § 28-1599.08(D) both provide, "For the purposes of this section, a motor carrier also includes an owner or operator of a lightweight motor vehicle claiming a reduced rate under § 28-1599.05, subsection E." In other sections of the motor carrier tax article, when "lightweight motor vehicle" is mentioned, it is usually in conjunction with a reference to motor carriers. A.R.S. §§ 28-1599.01, 28-1599.05, 28-1599.13. These references indicate the terms "motor carrier" and "lightweight motor vehicle operator" are synonymous; the only distinction is that one applies to motor vehicles, the other to lightweight motor vehicles.
That these terms were intended to operate synonymously, at least with regard to the exemption statute at issue, is evidenced by A.R.S. § 28-1599.05(I) itself. The motor carrier tax is imposed on the vehicle itself, not the operator or owner of that vehicle. The legislature's clear intent in adding the first sentence of A.R.S. § 28-1599.05(I) was to provide an exemption from other transaction privilege taxes to taxpayers who derive revenues from a vehicle that is already subject to tax by the State's motor carrier tax. The focus of the exemption is the vehicle subject to the motor carrier tax, not the taxpayer's relationship to that vehicle. The critical inquiry is whether the motor carrier tax has been paid. If it has, the exemption provided by A.R.S. § 28-1599.05(I) applies.
Nothing indicates the legislature intended the exemption in A.R.S. § 28-1599.05(I) to apply differently to those who deal with motor vehicles and those who deal with lightweight motor vehicles. Such a construction would in fact violate the equal protection clauses of the United States and Arizona Constitutions by discriminating between similarly situated taxpayers. U.S. Const. amend. XIV, § 1; Ariz. Const., art. II, § 13.
A privilege tax may be imposed on any class of business the legislature so desires as long as such classification is reasonable, not arbitrary, and all that fall within that class are treated alike. White v. Moore, 46 Ariz. 48, 46 P.2d 1077 (1935); Arizona State Tax Comm'n v. Lawrence Mfg. Co., 15 Ariz. App. 486, 489 P.2d 860 (1971); Shaw v. State, 8 Ariz. App. 447, 447 P.2d 262 (1968). Both motor carriers who operate their motor vehicles and those who cause their vehicles to be operated must pay a motor carrier tax on those vehicles. Similarly, both those who operate their lightweight motor vehicles and those who cause those lightweight vehicles to be operated must pay a motor carrier tax on those vehicles. For purposes of the exemption provided in A.R.S. § 28-1599.05(I), these taxpayers are similarly situated. To construe the statute to provide an exemption to persons who operate or cause to be operated a motor vehicle, but not to those who cause to be operated a lightweight vehicle is untenable. No rational basis exists that would permit such disparate treatment.
In light of the foregoing, the Court construes the word "operator" in the first sentence of A.R.S. § 28-1599.05(I) to include a person who operates or causes to be operated a lightweight motor vehicle. By making its trucks available for leasing, Ryder causes its lightweight motor vehicles to be operated just as it causes it motor vehicles to be operated. Ryder is therefore a lightweight motor vehicle operator for purposes of the exemption provided in the first sentence of A.R.S. § 28-1599.05(I).
Preemption
The remaining issue to be resolved is whether the exemption provided for in A.R.S. § 28-1599.05(I) preempts the City of Phoenix from imposing its privilege tax on Ryder's leasing activities. A charter *500 city such as Phoenix may exercise all the powers authorized by its charter, insofar as those powers are consistent with the Arizona Constitution and do not conflict with State legislative enactments which have appropriated the field in an area of general statewide concern. Ariz. Const. art 13, § 2; A.R.S. § 9-284(B); Flagstaff Vending Co. v. City of Flagstaff, 118 Ariz. 556, 559, 578 P.2d 985, 988 (1978); Shaffer v. Allt, 25 Ariz. App. 565, 567, 545 P.2d 76, 78 (1976).
In the present case, the City's attempt to impose a privilege tax on Ryder is in direct conflict with A.R.S. § 28-1599.05(I). The plain language of the statute indicates that the legislature has appropriated the field of taxation of those motor carriers and lightweight vehicle operators described in subsection (I). The Court holds that the City of Phoenix is preempted by A.R.S. § 28-1599.05(I) from imposing its transaction privilege tax on Ryder's leasing activities.
The City argues that the effect of the Court's ruling is to place taxpayers in the same business in different taxing situations. A business that purchases a vehicle for transporting goods for hire is taxed by the City on the purchase of the vehicle. On the other hand, a business that purchases a vehicle and then leases that vehicle to someone who then transports goods for hire is not taxed by the City on the purchase of the vehicle. Although both business are involved in transporting goods for hire, only one business is taxed on the purchase of its vehicles.
The Phoenix City Council's decision to exempt certain purchases from its transaction privilege tax is wholly irrelevant to Ryder's right to an exemption under A.R.S. § 28-1599.05(I). If the City does not wish to exempt sales of trucks to lessors, it is always free to change the Phoenix City Code. But whether the City grants a lessor such an exemption or not in no way affects the exemption provided for in A.R.S. § 28-1599.05(I).
In conclusion, the Court holds that Ryder's revenues from leasing motor vehicles and lightweight motor vehicles upon which the state motor carrier tax has been paid are exempt from the transaction privilege taxes imposed under § 14-2(a)(8) of the Phoenix City Code.
NOTES
[1] A.R.S. § 40-641 stated in pertinent part:

A. In addition to all other taxes and fees:
1. Every common motor carrier of property and every contract motor carrier of property shall pay to the state, on or before the twenty-fifth day of each month, a license tax of two and one-half percent of the gross receipts from the carrier's operations within the state for the preceding calendar month . ..